**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Evelyn Rodriguez,<br><br>      Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>      Defendant. | No. CV-21-00473-TUC-JGZ (BGM)<br><br>**ORDER** |

On February 28, 2023, Magistrate Judge Bruce G. Macdonald issued a Report and Recommendation (R&R), recommending the Court deny Plaintiff Evelyn Rodriguez's appeal and affirm the Commissioner's decision. (Doc. 24.) Rodriguez filed an Objection and the Commissioner filed a Response. (Docs. 25, 26.) After an independent review of the record and R&R, the Court will overrule Rodriguez's Objection, adopt the R&R, and affirm the Commissioner's decision.

**I.      Standard of Review**

When reviewing a Magistrate Judge's R&R, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). District courts are not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *see also* 28 U.S.C. § 636(b)(1); Fed.

R. Civ. P. 72. A party is not entitled as of right to *de novo* review of evidence or arguments which are raised for the first time in an objection to the R&R, and the Court's decision to consider newly raised arguments is discretionary. *Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002); *United States v. Howell*, 231 F.3d 615, 621–22 (9th Cir. 2000).

**II.  Background**

Rodriguez does not object to the Magistrate Judge's summary of the factual and procedural background. (*See* Doc. 25.) Therefore, the Court does not restate the facts here but includes the relevant facts in its discussion of the issues presented.

**III.  Discussion**

The court will only set aside an ALJ's disability determination if it is based on legal error or not supported by substantial evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). An ALJ's decision will not be reversed for harmless errors. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). Substantial evidence is relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *Id.*

In her Objection, Rodriguez argues the Magistrate Judge (1) improperly considered the ALJ's weighing of nurse practitioner Oldfather and Dr. Kivowitz's opinions; and (2) failed to evaluate whether the ALJ adequately encompassed Rodriguez's symptom testimony in determining her residual functional capacity. (Doc. 25.) The Court will address each argument in turn.

**A.  Opinion Evidence**

Rodriguez first argues the Magistrate Judge erred in finding the ALJ appropriately discounted NP Oldfather's opinion. (Doc. 25 at 1–2.) An ALJ must provide "specific, legitimate reasons based on substantial evidence" to reject the testimony of a medically acceptable treating source. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Under the pre-2017 Social

Security regulations governing this claim,[1] a nurse practitioner is an "other source" opinion, not a medically acceptable treating source. *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017). The ALJ may discount a nurse practitioner's opinion by providing "germane" reasons for doing so. *Id.*; *see also Molina*, 674 F.3d at 1111. Conflicting medical evidence is a germane reason for discounting an "other source" opinion. *Coleman v. Saul*, 979 F.3d 751, 757 (9th Cir. 2010).

Here, the ALJ found NP Oldfather's opinion "partially persuasive" in part because it reported a severity of symptoms not fully consistent with the medical record. (Doc. 18-3 at 23–24.) NP Oldfather opined that, even though Rodriguez's symptoms improved from severe to moderate, Rodriguez had a "marked" degree of impairment which would interfere with her working. (Doc. 18-12 at 184–86.) The ALJ found that this opinion conflicted with evidence of Rodriguez responding positively to therapy and medication;[2] Rodriguez's Global Assessment of Functioning (GAF) scores showing mild to moderate symptoms;[3] and findings by the State agency consultants and opinions of Dr. Kivowitz and Dr. Johnson that Rodriguez could return to work.[4] (Doc. 18-3 at 23–24.) These inconsistencies were germane reasons for the ALJ to discount NP Oldfather's opinion. *See Coleman*, 979 F.3d at 757.

Circumstances may arise where an ALJ must give a nurse practitioner's opinion more weight because of a longstanding treatment relationship with the claimant. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). Even so, an ALJ may discount

---

[1] The Social Security Administration has recently adopted regulations applicable to claims filed after March 27, 2017 to expand the category of "acceptable medical sources" to include nurse practitioners. 20 C.F.R. § 404.1502(a)(7). The parties agree Rodriguez's claim falls under the older regulations because it was filed before March 2017. (Docs. 22 at 8; 23 at 1.)

[2] (Docs. 18-9 at 39–40, 56, 80; 18-10 at 22, 101, 103, 115, 122, 152, 154; 18-11 at 118, 135; 18-12 at 137, 145, 159, 163, 184; 18-14 at 42, 46, 54; 18-15 at 2.)

[3] Rodriguez's GAF scores ranged from 58 to 65; scores ranging from 51 to 60 reflect moderate symptoms and scores ranging from 61 to 70 reflect mild symptoms. (Docs. 18-3 at 23–24; 18-9 at 47, 57, 71, 114, 136; 18-10 at 8; 18-11 at 5; 18-12 at 50; 18-13 at 17.)

[4] (Docs. 18-3 at 77–84; 18-4 at 2–21, 24–49, 52–83; 18-9 at 134–36.)

a treating nurse practitioner's opinion if it is inconsistent with other medical evidence or lacking a sufficient explanation. *See id.* As discussed above, NP Oldfather's opinion conflicted with evidence in the medical record. Further, NP Oldfather drafted her opinion on a three-page fill-in-the-blank questionnaire from Rodriguez's attorney. (Doc. 18-12 at 184–86.) In responding to the questionnaire's prompts about Rodriguez's impairments and ability to work, NP Oldfather provided conclusory, one-sentence responses which offered little explanation of her reasoning. (*Id.* at 184–85.) An ALJ may discount such an opinion based on its inconsistency with other evidence and insufficient explanation. *See, e.g.*, *Woods v. Kijakazi*, 32 F.4th 785, 794 (9th Cir. 2022) (affirming an ALJ's decision to discount a treating nurse practitioner's opinion drafted on a "fill-in-the-blank questionnaire").

Next, Rodriguez argues the Magistrate Judge erred in finding the ALJ reasonably relied on Dr. Kivowitz's opinion because Dr. Kivowitz had a flawed understanding of the Social Security Administration's "C criteria" for mental disorders and was grossly unfamiliar with Rodriguez's medical record. (Doc. 25 at 2.) According to Rodriguez, "Dr. Kivowitz stated that Ms. Rodriguez did not meet the 'C criteria' because her impairments [were at] the moderate level 'and that's not enough to meet the C criteria.'" (Doc. 19 at 19.) This argument is unpersuasive. Dr. Kivowitz testified that he based his opinion not only on Rodriguez's moderate symptoms but also Dr. Johnson's opinion that Rodriguez had a "[g]ood prognosis for working." (Docs. 18-3 at 79–81; 18-9 at 136.) Rodriguez does not meet the "C criteria" if she can return to work. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00G.2.c. Finally, although Dr. Kivowitz could not identify the length of NP Oldfather's treatment relationship with Rodriguez, he still testified that he reviewed the medical record and, during his testimony, accurately referenced the medical sources that supported and undermined Rodriguez's claimed limitations. (*See* Doc. 18-3 at 77–79, 81.) Dr. Kivowitz was not so unfamiliar with the medical record that the ALJ's reliance on his opinion was unreasonable. Substantial evidence supports the ALJ's decision to rely on Dr. Kivowitz's opinion. *See Burch*, 400 F.3d at 679.

### B.     Symptom Testimony

In evaluating a claimant's symptom testimony, ALJs must engage in a two-step analysis. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). If the claimant has presented such evidence, the ALJ proceeds to consider all of the evidence presented to determine the persistence and intensity of the alleged symptoms. *Id.* § 404.1529(c). This evidence includes information about the claimant's prior work record, the claimant's statements about her symptoms, evidence submitted by medical and nonmedical sources, and observations by agency employees. *Id.* § 404.1529(c). If there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons supported by evidence in the record. *Smith v. Kijakazi*, 14 F.4th 1108, 1112 (9th Cir. 2021). In *Molina*, the Ninth Circuit affirmed an ALJ's decision to discount the alleged severity of the claimant's impairments because of conflicting medical evidence, the claimant's failure to seek treatment, and daily activities that directly conflicted with the claimant's reported inability to tolerate even minimal human interaction. 674 F.3d at 1112–14.

In her Objection, Rodriguez argues that the Magistrate Judge "made no recommendations about whether [Rodriguez's] symptom testimony is adequately encompassed by the RFC." (Doc. 25 at 4.) The Magistrate Judge found that the ALJ did not err by rejecting the alleged severity of Rodriguez's symptoms and finding she did not meet the Social Security Administration's "C criteria." (Doc. 24 at 24–25.) The Court agrees. The ALJ found Rodriguez suffered from depression, anxiety, and borderline personality disorder but, in determining Rodriguez's residual functional capacity, the ALJ concluded these impairments were not as severe as Rodriguez alleged. (Doc. 18-3 at 18, 21–24.) Substantial evidence supports this conclusion, including Rodriguez's initial failure to seek treatment, Rodriguez's participation in activities inconsistent with her claimed limitations, and conflicting medical evidence. *See Molina*, 674 F.3d at 1112–14.

Rodriguez has at least fifteen years of work experience as an office clerk, tutor,

school aide, and community associate.[5] (Docs. 18-8 at 21.) She has no physical limitations and alleges she cannot work due to her mental health. (Docs. 18-8 at 12; 18-9 at 142–45.) Rodriguez was fifty-one years old on February 1, 2012, the alleged onset date of disability. (Doc. 18-7 at 2.) Around 2012 or 2013, Rodriguez moved from New York to Arizona with her husband. (Docs. 18-3 at 38; 18-9 at 39; 18-10 at 172.) From Rodriguez's alleged onset date in February 2012 to October 2014, there is no record of her seeking treatment for her mental health symptoms. (Doc. 18-3 at 21; *see also* Doc. 18-9.)

Because of her anxiety and depression, Rodriguez claims she cannot tolerate being in a room with three other people and regularly struggles to leave her bed and complete basic daily tasks of selfcare. (Docs. 18-3 at 39, 66–67; 18-8 at 12–20.) However, the record shows Rodriguez also reported spending her time cooking, cleaning, painting, going to church, shopping, eating out, starting a new business, keeping herself busy outside her home, caring for her five-year-old stepdaughter, and socializing with a small group of church friends. (Docs. 18-9 at 30, 39–40, 43, 54–55, 58–59, 118–19, 134; 18-10 at 22, 158, 178.) These activities directly conflict with Rodriguez's alleged inability to tolerate even minimal human interaction and complete simple tasks. Rodriguez also traveled from Arizona to New York four to five times, personally coordinating with the airline and her mental health providers to make travel arrangements for her dog and cat. (Docs. 18-3 at 41; 18-11 at 49–51, 56, 121; 18-12 at 64–65, 137, 139.) Although Rodriguez asserted in her testimony that she flew first-class, (Doc. 18-3 at 38), this air travel still demonstrates another example of human interaction and self-management inconsistent with her claimed limitations.

Medical evidence also conflicts with the alleged severity of Rodriguez's symptoms. As discussed above, Rodriguez's GAF scores show mild to moderate symptoms. The Social Security Administration has said that GAF scores should be considered as medical

---

[5] Although Rodriguez did not list this experience in her disability application, and the Court did not include this in its analysis, evidence in the medical record shows Rodriguez reported that she "recently gave up a day care business in New York City to move to Tucson." (Doc. 18-9 at 43.)

- 6 -

opinion evidence if they come from an acceptable medical source. *Wellington v. Berryhill*, 878 F.3d 867, 871 n.1 (9th Cir. 2017) (citing *Soc. Sec. Disab. Claims Handbook* § 2:15 n.40). Because Dr. Johnson, a licensed clinical psychologist, is an acceptable medical source, the ALJ could consider the GAF score in Dr. Johnson's report, which indicated Rodriguez had mild symptoms. (Doc. 18-9 at 136.) Dr. Kivowitz and Dr. Johnson's opinions and the State agency consultants' findings also conflicted with Rodriguez's claimed limitations. (Docs. 18-3 at 77–84; 18-4 at 88–107, 110–35, 138–69; 18-9 at 134–36.)

The ALJ also did not overlook the waxing and waning of mental health symptoms by rejecting Rodriguez's symptom testimony. All of Rodriguez's GAF scores reflected mild to moderate symptoms. (Docs. 18-3 at 23–24; 18-9 at 47, 57, 71, 114, 136; 18-10 at 8; 18-11 at 5; 18-12 at 50; 18-13 at 17.) No acceptable medical source opined that Rodriguez could not work. (*See* Doc. 18-3 at 81–82.) And after examining Rodriguez, Dr. Dr. Johnson opined that Rodriguez's depressive disorder was likely "aggravated by psycho-social stressors." (Doc. 18-9 at 136.) Indeed, Rodriguez's symptoms worsened when she faced familial and marital problems. (*See* Docs. 18-10 at 20, 52; 18-11 at 100.) Conversely, Rodriguez reported improvement when she saw positive trends in her relationships, kept herself busy, and started a new business. (*See* Doc. 18-9 at 37, 55; 18-10 at 22.) The ALJ's longitudinal view of the medical record was not unreasonable.

Rodriguez's lack of initial treatment, her engagement in various activities requiring human interaction and self-management, and medical evidence indicating she had moderate symptoms and the ability to work were specific, clear, and convincing reasons upon which the ALJ could discount the alleged severity of Rodriguez's impairments. *See Molina*, 674 F.3d at 1112–14. A reasonable mind might accept this evidence as adequate to support the ALJ's decision that Rodriguez was not disabled under the Social Security Act from February 2012 to May 2021. *See Burch*, 400 F.3d at 679. Although the evidence here may be susceptible to more than one rational interpretation, the Court must uphold the ALJ's decision. *See id.*

IV. Conclusion

Accordingly,

**IT IS ORDERED:**

1. Rodriguez's Objection (Doc. 25) is **overruled**.

2. The Report and Recommendation (Doc. 24) is **adopted.**

3. The Commissioner's Final Decision is **affirmed**.

4. The Clerk of Court shall enter judgment accordingly and **close** its file in this action.

Dated this 28th day of March, 2023.

Honorable Jennifer G. Zipps
United States District Judge